## BALES vs. THE STATE.

For a conviction on indictment, under section 1, of the act of 12th January, 1853, amendatory of *sec. 4, chap.* 51, *Dig.*, prohibiting the playing of cards for amusement on Sunday, the State's attorney is entitled to a fee of $7 50—and not to the fee of $20, allowed on convictions for *gambling.*

*Appeal from the Circuit Court of Marion county.*

Hon. WILLIAM C. BEVENS, Circuit Judge.

WILLIAM BYERS, for the appellant.

Mr. Attorney General JOHNSON for the State.

Mr. Justice HANLY delivered the opinion of the Court.

The appellant was indicted in the Marion Circuit Court, un-

der the 1st section of an act entitled " an act to amend the 4*th sec. of the* 51*st chap. of the Digest,* under the head of Sabbath breaking," approved 12th January, 1853    See *acts* 1853, *p.* 205. The section under which the indictment in question was drawn, is in these words: " That every person who shall on the Christian Sabbath or Sunday, be engaged in any game of brag, bluff, polker, seven-up, three-up, twenty-one, vingtun, thirteen cards, the odd trick, forty-five, whist, or any other game at cards, known by any name now known to the laws, or with any other new name, for any bet or wager on such games, or for amusement without any bet or wager, shall on conviction thereof, be fined in any sum not less than $25, nor more than. $50."

The indictment is as follows: " That James Bales, late of Marion county, on the 5th day of October, in the year of our Lord, one thousand eight hundred and fifty-six, with force and arms, in the county of Marion aforesaid, (said day being Sunday,) was engaged in playing a game of cards, commonly called seven-up, on Sunday, without bet or wager, contrary," etc.

At the April term, 1857, Bales, the appellant, appeared, pleaded guilty, and submitted the case to the Court.    A fine of $25 was imposed on him, for which amount and all the costs, judgment was rendered by the Court, and an order was entered requiring him to remain in the custody of the sheriff until the fine and costs should be fully paid.    The attorney for the State demanded $20 for his fee; appellant offered to pay the attorney $7 50, insisting that that was all he was allowed by law.    The attorney for the State then moved the Court to tax the costs and to tax his fee at $20.    Appellant resisted the motion, and insisted that the attorney for the State was only entitled to the sum of $7 50, as his fee in the case.    The Court upon consideration, however, taxed the State's attorney's fee in the case at $20.    Bales excepted and appealed.

The only question before us upon the transcript, is to determine what fee the attorney for the State is entitled to under

the facts shown in the record at hand. And we think there is no difficulty in the question.

The fees of attorneys for the State are regulated, with a few exceptions, by *sect.* 2, *chap.* 68, *Digest* 511. By reference to that, it will be found they are allowed " for each conviction upon indictment or presentment for a misdemeanor or breach of the peace $7 50;" and " for each conviction upon indictment for *gaming* $20."

The indictment in the case at bar was evidently not founded on the *gaming act.* The defendant was not charged with *gaming*, in the legal sense of that word, and we must intend that the Legislature, in fixing the attorney's fee at $20, " for convictions upon indictment for *gaming*," used the word *gaming* in its technical signification. The gaming act is taken from the Revised Statutes, which went into force, by the proclamation of the Governor, on the 20th March, 1839. The word *"gaming"* is fully defined in that act. The act giving State's attorneys $20 for convictions upon indictments for *gaming*, was passed and approved 23d December, 1842, (see *Digest* 511,) so that when the fee of $20 was allowed for convictions on indictments for *gaming*, we must suppose the Legislature had in view the act defining the offence of gaming, and only intended the fee of $20 to be recoverable for convictions for *gaming*, as defined and understood by the act of 1839.

Under the act of 1839—*Digest, sec.* 8, *chap.* 51—the crime of *gaming* consisted, not in the playing one of the games enumerated, but in the betting money or any valuable thing, upon one of the games. As far as the law is concerned, it is still no offence to play any of the games named in the 8th sect. of the act of 1839, without wager or bet, except on Sunday, as provided for by the act of 12th January, 1853. It was not *"gaming"* to play at cards without wager, when the Legislature fixed the State's attorney's fee at $20 in case of convictions on indictments for gaming, on the 23d December, 1842, when that act was passed, and we may safely say that it was not contemplated by that body, that that fee should ever be demanded,

except in cases of convictions for gaming as then understood or defined.

If the indictment in the case before us, had charged the appellant with gaming on the Sabbath—that is, with playing one of the games prohibited or embraced under the broad provisions of the act of 12th January, 1853, and betting money or other valuable thing on such game, we should feel no hesitancy in saying, the attorney for the State would be entitled to a conviction fee of $20, but under the indictment as it is drawn, being simply for playing the game of seven-up on Sunday, a new offence created by the act and not gaming under the old acts, we are constrained to hold the Court below taxed the fee of State's attorney at too much; he being only entitled to the sum of $7 50—that being his fee under the act of 1842, " for each conviction upon indictment or presentment for a misdemeanor or breach of the peace."

For this error the judgment of the Marion Circuit Court, is therefore, reversed, and the cause remanded.

Absent, Mr. Justice SCOTT.